IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**KELLY M. BLANKENSHIP,**

    **Plaintiff,**

v.                                                               **Civil Action No. 3:15cv294**

**AMERICAN FEDERAL GOVERNMENT
EMPLOYEES,**

    **Defendant.**

## MEMORANDUM OPINION

Before the Court is Defendant American Federal Government Employee's ("AFGE" or the "Union") Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)[1] and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)[2] (ECF No. 4); *pro se* Plaintiff Kelly M. Blankenship's "Motion to Dissmiss [sic] the Defendant's Motion to Dismiss Complaint Case Number 3:15-cv-294 with Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6)" (the "Motion to Dismiss the Motion to Dismiss") (ECF No. 9); and, Blankenship's "Request for Entry of Default and/or a Ruling in Favor of the Plaintiff" ("Request for Entry of Default") (ECF No. 11). As to AFGE's Motion to Dismiss, Blankenship responded, and AFGE replied.[3] (ECF Nos. 8, 13.) The

---

[1] "[A] party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

[2] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[3] AFGE provided Blankenship with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 4-1.)

Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[4] The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. This matter is ripe for disposition.

For the reasons that follow, the Court will grant AFGE's Motion to Dismiss. (ECF No. 4.) Because the Court will grant AFGE's Motion to Dismiss, the Court will deny as moot Blankenship's Motion to Dismiss the Motion to Dismiss and Request for Entry of Default. (ECF Nos. 9, 11.)

## I. Standards of Review

### A. Lack of Subject Matter Jurisdiction: Rule 12(b)(1)

In a motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways. Relevant here, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint

---

[4] Contrary to Federal Rule of Civil Procedure 8(a)(1), which requires the Complaint to contain "a short and plain statement of the grounds for the court's jurisdiction," Blankenship cites no grounds for this Court's jurisdiction over the action. Because Blankenship brings claims under two federal laws and the United States Constitution, the Court may exercise jurisdiction under Section 1331. Section 1331 defines federal question jurisdiction as follows: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Blankenship makes no allegations to support the existence of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1) ("(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- (1) citizens of different States . . . .").

fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

### B. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a

plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

### C. Obligation to Construe *Pro Se* Pleadings Liberally

District courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). A *pro se* plaintiff such as Blankenship must nevertheless allege "facts that state a cause of action." *Id.* (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims" that the litigant failed to raise on the face of the complaint.[5] *Newkirk v. Circuit Court of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

---

[5] Blankenship asserts facts in her Response by declaring them "under penalty of perjury . . . true and correct to the best of [her] information and belief." (Pl.'s Resp. 3, ECF No. 8.) Such a statement fails to transform the allegations in the Response into admissible evidence. *Hogge v. Stephens*, No. 3:09cv582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "mere pleading allegations" (quoting *Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2011))).

### D. Effect of Extrinsic Documents

The parties have placed numerous extrinsic documents before the Court.[6] "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)). None of the parties contests the authenticity of any of the documents appended.

---

[6] Blankenship attaches 28 exhibits to her Complaint. Some of the exhibits reference Bureau of Prisons ("BOP") policies and documents, other government memoranda, and information Blankenship feels is relevant to her purported damages. Of the 28 exhibits, 11 provide pertinent information specific to Blankenship and her allegations. (Compl. Exs. 5, 7–10, 12–15, 17–18.) The remaining exhibits are not central to Blankenship's claims or sufficiently referred to in her Complaint. (*See, e.g.*, Compl. Ex. 19 (article regarding the death of the longest-serving federal employee); *id.* Ex. 20 (Blankenship's pay statements from a two-week period in 2006 and a two-week period in 2015); *id.* Ex. 23 (blank AFGE membership application).)

Blankenship also attaches six pages to her Response to AFGE's Motion to Dismiss, most of which were already included as exhibits to the Complaint. None of those pages is relevant to Blankenship's Complaint or the Motion to Dismiss. For ease of reference, the Court employs the page numbers utilized by the CM/ECF docketing system when citing to the attachments.

## II. Procedural and Factual Background

### A. Summary of Allegations in the Complaint

The Complaint alleges a failure by AFGE and its pertinent local chapter ("Local 2052") to pursue, into arbitration, Blankenship's grievances against what she says were discriminatory hiring and promotion within the BOP at FCC Petersburg.[7] Construing Blankenship's 68-page, 238-paragraph Complaint liberally, the Court interprets the Complaint to raise four claims:

Claim I: Breach of the duty of fair representation for declining to pursue Blankenship's discrimination claims to arbitration, in violation of Title VII of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7114(a)(1);[8]

Claim II: Discrimination on the basis of race, gender, and sexual orientation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(c);[9]

---

[7] The Court previously considered similar challenges by Blankenship in an action against the Attorney General of the United States. *Blankenship v. Lynch* ("*Blankenship I*"), No. 3:14cv620, 2015 WL 5561221 (E.D. Va. Sept. 17, 2015). In *Blankenship I*, the Court held that Blankenship's claims for breach of contract were barred by the doctrine of sovereign immunity and that she failed to exhaust her administrative remedies to bring her Title VII claims. Blankenship did not appeal the Court's ruling.

[8] 5 U.S.C. § 7114(a)(1) states, in pertinent part:

(a)(1) A labor organization . . . is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.

5 U.S.C. § 7114(a)(1).

[9] 42 U.S.C. § 2000e-2 states, in pertinent part:

(c) Labor organization practices

It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

6

    Claim III:    Violations of Blankenship's rights under the Fifth[10] and Fourteenth[11] Amendments to the United States Constitution; and,

    Claim IV:    Defamation for AFGE Local President Derrick Bradden's written and oral statements regarding Blankenship's removal as union shop steward.

On May 30, 2014, Blankenship submitted to FCC Petersburg Warden Eric D. Wilson ("Warden Wilson") a document entitled "[A]ttempt at Informal Resolution" dated May 29, 2014 (the "Informal Grievance"). (Compl. ¶ 56; *id.* Ex. 7, ECF No. 1-7.) The Informal Grievance averred that Blankenship suffered discrimination because of her Caucasian race and heterosexuality due to the Affirmative Employment Program ("AEP") that gave hiring and promotion preferences to applicants and employees who identified as a racial minority or as homosexual. The Informal Grievance did not identify a specific instance when the BOP discriminated against Blankenship.

---

    **(2)** to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

    **(3)** to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e-2(c). The United States Court of Appeals for the Fourth Circuit has held that a "labor union representing federal employees," if it operates in an "industry affecting commerce, . . . is subject to the proscriptions of [Section 2000e-2(c)]." *Jones v. Am. Workers Union*, 192 F.3d 417, 427–28 (4th Cir. 1999).

[10] The Fifth Amendment states, in pertinent part: "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

[11] The Fourteenth Amendment states, in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

On June 6, 2014, Blankenship received an email from FCC Petersburg's Human Resources Department that attached Warden Wilson's response to her Informal Grievance. The response, dated June 5, 2014, directed Blankenship to "contact the EEO Counselor within 45 days of the alleged discrimination" if she believed she had been subjected to discrimination. (Compl. Ex. 8, at 2.) The response identified the appropriate EEO counselor and contained the counselor's contact information.

On June 9, 2014, Blankenship submitted a Formal Grievance. The Formal Grievance repeated verbatim the allegations that Blankenship made in the Informal Grievance regarding the BOP's discriminatory hiring and promotion. In the Formal Grievance, in addition to the removal of the AEP, Blankenship requested remedies including attorneys' fees, damages, and other injunctive relief, mentioning the Equal Employment Opportunity Commission ("EEOC") guidelines. Like the Informal Grievance, the Formal Grievance did not identify a specific time when the BOP discriminated against Blankenship. On June 11, 2014, Blankenship received a response from Warden Wilson denying her Formal Grievance. The response again directed Blankenship to the EEO counselor.

On June 9, 2014, the same day Blankenship submitted her Formal Grievance, the Local Union President Derrick Bradden removed Blankenship as a Union representative. Gwendolyn White, Secretary of Local 2052, sent an email to Union members at FCC Petersburg stating in full: "Per: The Local 2052 President Derrick Bradden: Effective Immediately, Kelly Blankenship and Neal Price[12] are no longer shop steward. If you have any question[s], please contact your union President Derrick Bradden. Thank You in Advance." (Compl. Ex. 12, at 3.)

---

[12] The Court also previously considered challenges by Price in an action against the Attorney General of the United States nearly identical to *Blankenship I*. *Price v. Lynch*, No. 3:14cv619, 2015 WL 5561219 (E.D. Va. Sept. 17, 2015). Price did not appeal the Court's ruling.

White also sent an individual email to Blankenship removing her as "[s]hop steward." (Compl. ¶ 96; *see id.* Ex. 12, at 2.)[13] Blankenship alleges that the email removing her and Price from their Union positions "gave the appearance that [they] had done something wrong." (Compl. ¶ 103.)

At a July 10, 2014 Union meeting, after an inquiry as to Bradden's reasoning for Blankenship and Price's removals, Bradden replied that the position was an appointment subject to removal "at any time." (*Id.* ¶ 110.) He further explained, "It was up to me. I removed them because their views don't fit with this Union's views. That's why I removed them." (*Id.*) At some point later, Bradden told Sam Engle, the Executive Vice-President of Local 2052, that he removed Blankenship as shop steward because she was "filing some [r]acist s**t." (*Id.* ¶ 91.)

Under the collective bargaining agreement applicable to Blankenship, only the BOP or the Union could take a formal grievance to arbitration. Neither the BOP nor the Union pursued Blankenship's Formal Grievance to arbitration. On July 14, 2014, Blankenship filed a complaint with the Federal Labor Relations Authority (the "FLRA")[14] for AFGE's failure to pursue her grievance to arbitration. Blankenship told the FLRA that AFGE's failure to represent her Formal Grievance in an arbitration process was the result of racial, sexual orientation, and gender discrimination. On March 24, 2015, Local 2052 and Blankenship reached a settlement before the FLRA. The settlement required Local 2052 to post a "Notice" informing Union members of their rights to file individual grievances and affirming Local 2052's obligation not to discriminate against employees for filing such grievances. Although she does not separate the contention as a claim, Blankenship now alleges that Bradden has failed to abide by the

---

[13] Blankenship unintentionally appended to her Complaint the individual email from White directed to Price, but Blankenship alleges that she also received a similar email.

[14] "The FLRA is the independent administrative agency charged with enforcing the CSRA." *Ivey v. FLRA*, No. 2:10cv64, 2011 WL 5042074, at *2 (E.D.N.C. Oct. 21, 2011) (citations omitted).

9

settlement. The Complaint and Blankenship's various memoranda are bereft of facts regarding the manner in which Bradden or AFGE failed to comply with the settlement.

### B. Procedural History

On May 15, 2015, Blankenship filed her Complaint against AFGE seeking significant monetary relief, including compensatory damages of $20,138,000. AFGE filed a Motion to Dismiss. Blankenship responded, and AFGE replied. Blankenship also filed a Sur-reply, in violation of Eastern District of Virginia Local Civil Rule 7(F)(1) (dictating filing deadlines for motion response and reply briefs and forbidding "further briefs or written communications" without leave of Court). In the interests of justice, however, the Court will consider the Sur-reply for three reasons: (1) Blankenship proceeds *pro se*; (2) AFGE did not oppose the filing of the Sur-reply; and, (3) the Sur-reply did not raise new or significant issues. (ECF No. 17.)

### III. Analysis

The 68-page Complaint lacks coherence and contains sprawling assertions in want of linear connection, factually or legally. For the reasons explained below, this Court has no subject matter jurisdiction over Blankenship's claims for breach of AFGE's duty of fair representation or over her claims under Title VII. Further, as to violations of her Fifth and Fourteenth Amendment rights, Blankenship fails to state a claim for which relief can be granted. The Court declines to exercise supplemental jurisdiction over Blankenship's state law claim of defamation because the Court dismisses all the Complaint's federal claims. Therefore, the Court will grant the Motion to Dismiss and dismiss the Complaint.

### A. No Subject Matter Exists Over Blankenship's Claims of Breach of AFGE's Duty of Fair Representation Because the CSRA Provides the Exclusive Remedy for Such Claims

This Court lacks subject matter jurisdiction over Blankenship's claims against AFGE for breach of the duty of fair representation[15] because the CSRA provides the exclusive remedy for such claims, and the district court plays no part in their resolution.

The CSRA's comprehensive remedial scheme provides a "framework for evaluating adverse personnel actions against [federal employees.]" *United States v. Fausto*, 484 U.S. 439, 443 (1988) (alteration in original) (quoting *Lindahl v. OPM*, 470 U.S. 768, 774 (1985)).[16] Among other provisions not relevant here, the CSRA requires unions to represent the "interests of all employees in the unit it represents without discrimination." *Karahalios v. Nat'l Fed'n of Fed. Emps.*, 489 U.S. 527, 531 (1989) (citing 5 U.S.C. § 7114(a)(1)). Known as the "duty of fair representation," the CSRA makes clear that a breach of that duty constitutes an "unfair labor practice" ("ULP"). *Id.* at 532 (citing 5 U.S.C. § 7116(b)(8)). Through the system established by Congress in the CSRA, the FLRA adjudicates all ULP complaints. *Karahalios*, 489 U.S. at 532 (citing 5 U.S.C. § 7118). A federal district court cannot review an FLRA decision. *Id.* at 532;

---

[15] A dissonance exists in Blankenship's submissions to the Court regarding whether she seeks to vindicate a right to fair representation. (*Compare, e.g.*, Compl. ¶ 5 ("This action is specifically for, but not limited to[,] the non-representation and/or the lack of fair representation, committed by the Union . . . of [Blankenship] and her grievance . . . ."); *id.* ¶ 157 (asserting a "lack of duty of fair representation by the Union"); *id.* ¶ 175 (alleging a denied promotion due to AFGE's "not processing [Blankenship's] grievance"), *with* Sur-reply at 4 ("[Blankenship] is not bringing this case to Federal District Court for the AFGE failing to represent."). Blankenship's frequent shifts in position on this and other issues hinder clean analysis of her claims. Nonetheless, the Court liberally construes the Complaint to attempt to raise claims for breach of the duty of fair representation as well as discrimination under Title VII of the CRA.

[16] The Supreme Court of the United States noted in *Fausto* that a leading purpose of the CSRA was to replace the judicial remedies within the civil service system, which had become an "outdated patchwork of statutes and rules built up over almost a century." 484 U.S. at 443.

*Fausto*, 484 U.S. at 449. Instead, "persons aggrieved by a final FLRA order may seek review in the appropriate court of appeals."[17] *Karahalios*, 489 U.S. at 532 (citing 5 U.S.C. § 7123(a)).

Because grievants must bring all ULP claims before the FLRA, the comprehensive remedial scheme Congress devised in the CSRA clearly mandates that "no private right of action for a union's breach of its duty of fair representation" exists in a federal district court. *Lane*, 2006 WL 4711891, at *4; *accord Burton v. Am. Fed. Gov't Emps.*, No. 11cv1416, 2012 WL 3580399, at *13 (E.D.N.Y. Aug. 17, 2012); *Ivey*, 2011 WL 5042074, at *4. A district court has no subject matter jurisdiction to hear new claims of breach of the duty of fair representation or to consider failures in the FLRA's adjudication of such complaints.

Here, Blankenship's claims for AFGE's breach of the duty of fair representation fail in two ways. First, she cannot seek a review of the FLRA decision in this Court. Only the appropriate court of appeals may do so. *Karahalios*, 489 U.S. at 532. Second, she has no private cause of action to bring a breach of fair representation claim here. *Lane*, 2006 WL 4711891, at *4. Accordingly, this Court has no subject matter jurisdiction over any claims of a breach of the duty of fair representation. The Court will dismiss Blankenship's claim for breach of the duty of fair representation under the CSRA.

---

[17] "[I]n *Fausto,* the Supreme Court reviewed the history of the CSRA and concluded that Congress intended to supplant the hodgepodge of judicial remedies that had previously existed for various types of federal employees with the uniform gradation of review channels . . . ." *Lane v. Wynne*, No. PJM-04-1051, 2006 WL 4711891, at *3 (D. Md. June 23, 2006) (quoting *McAuliffe v. Rice*, 966 F.2d 979, 980 (5th Cir. 1992)).

B.   **Failure to Exhaust Administrative Remedies Under Title VII of the CRA Deprives this Court of Subject Matter Jurisdiction**

This Court also lacks subject matter jurisdiction over Blankenship's Title VII[18] claim (Claim II) because Blankenship does not demonstrate that she exhausted her administrative remedies.[19] *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

---

[18] AFGE argues unpersuasively that Blankenship's Title VII, constitutional, and defamation claims are "intertwined" or "entwined" with her claim of a breach of the duty of fair representation, and that she must then bring all potentially related claims to the FLRA. (AFGE Mem. Supp. Mot. 10, ECF No. 5; Reply Supp. Mot. 6–7, ECF No. 13.) In support of its position, AFGE cites a case from the United States Court of Appeals for the District of Columbia Circuit that held that aggrieved union plaintiffs had to bring constitutional claims "intertwined" with claims under the CSRA through the administrative scheme in the CSRA. *Steadman v. Governor*, 918 F.2d 963, 967 (D.C. Cir. 1990). AFGE also points to an unpublished case from the United States District Court for the Eastern District of North Carolina which relied on *Steadman* to hold that a union plaintiff's constitutional claims and claims arising from the same facts based on federal statutes were "intertwined" with the plaintiff's claims under the CSRA and thus subject to the administrative process. *Ivey*, 2011 WL 5042074, at *4.

The *Steadman* court's holding rests on unique factual circumstances. *Steadman*, 918 F.2d at 967. Especially given the sprawling allegations at bar, the Court is persuaded by courts that have held that the CSRA did not extinguish a union plaintiff's right to bring suit under Title VII of the CRA. These cases have correctly noted that, within the CSRA itself, Congress expressly preserved "federal employees' rights to bring suit under Title VII and other anti-discrimination laws." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009) (citing 5 U.S.C. § 2302(d)); *see also Mahoney v. Donovan*, 721 F.3d 633, 635 n.4 (D.C. Cir. 2013); *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 374 (5th Cir. 2007); *Wilson v. Harvey*, 156 F. App'x 55, 57 n.4 (10th Cir. 2005); *Morales-Vallellanes v. Potter*, 339 F.3d 9, 15, 17 (1st Cir. 2003); *Murphy v. Adams*, No. 12-1975, 2013 WL 398753, at *4 (D. Md. Jan. 31, 2013); *Cogburn v. AFGE*, No. 1:06cv425, 2006 WL 2884505, at *7 (S.D. Miss. Oct. 10, 2006). The CSRA specifically provides:

> [CSRA] shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through . . . any right or remedy available to any employee or applicant for employment in the civil service under – (1) section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin.

5 U.S.C. § 2302(d)(1). In any event, whether the comprehensive scheme articulated in the CSRA provides the exclusive avenue for Blankenship's claims does not alter the Court's conclusion that all of Blankenship's claims fail for lack of subject matter jurisdiction or for failure to state a claim.

13

Before filing suit under Title VII, a plaintiff is required to file a charge with the Equal Employment Opportunity Commission ("EEOC") and exhaust his or her administrative remedies. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). "The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Tonkin v. Shadow Mgmt., Inc.*, 605 F. App'x 194, 194 (4th Cir. 2015) (citing *Jones*, 551 F.3d at 300). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)).

This Court lacks subject matter jurisdiction over Blankenship's Title VII discrimination claim because Blankenship failed to satisfy her burden of demonstrating that she exhausted her administrative remedies. First, the Complaint contains no allegations that Blankenship submitted an EEOC charge. *See Bryant*, 288 F.3d at 132. Second, the Complaint lacks any reference to Blankenship's exhaustion of administrative remedies regarding an EEOC charge. *See Tonkin*, 605 F. App'x at 194. Nothing in the record establishes, or even hints, that Blankenship exhausted her administrative remedies as to the Title VII discrimination claim alleged in the Complaint. Accordingly, this Court lacks subject matter jurisdiction over this unexhausted Title VII claim. *See Jones*, 551 F.3d at 300. The Court will dismiss Blankenship's Title VII claim.

---

[19] In *Blankenship I*, after an extensive review of three grievances filed by Blankenship and an EEOC charge, this Court held that Blankenship did not exhaust her administrative remedies. *Blankenship I*, 2015 WL 5561221, at *9. None of those documents is before the Court in this case, with the exception of the June 9, 2014 Formal Grievance. Blankenship does not argue here that the Formal Grievance reached a conclusion through arbitration or with the EEOC. AFGE does not suggest that the outcome in *Blankenship I* creates any bar to the present case, nor does the Court make such a finding.

14

### C. Blankenship Fails to State a Claim for Violations of Her Fifth and Fourteenth Amendment Rights Because She Alleges No State Action

Blankenship fails to state a claim for the violations of her rights under the Fifth and Fourteenth Amendments to the United States Constitution because she alleges no state action. The Fifth Amendment restricts only actions of the federal government, not actions of private persons. *Key v. Robertson*, 626 F. Supp. 2d 566, 579 (E.D. Va. 2009) (citing *Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461–62 (1952)). Likewise, the Fourteenth Amendment proscribes the states, not private parties, from denying federal constitutional rights. *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 837–38 (1982)). If the action complained of is not "state action," the inquiry ends. *Id.* (citing *Rendell-Baker*, 457 U.S. at 838).

Here, Blankenship alleges no facts to show that any of the actions of which she complains constituted action by the federal or state government. Her Complaint, Response, and Sur-reply are devoid of allegations of state action. Blankenship improperly attempts to use the Fifth and Fourteenth Amendments to proscribe conduct by Bradden, a private person, and AFGE, a private entity. *Key*, 626 F. Supp. 2d at 579. Because these amendments do not cover private conduct, Blankenship fails to state a claim under the Fifth and Fourteenth Amendments. The Court will dismiss these claims.

### D. The Court Declines to Exercise Supplemental Jurisdiction Over Blankenship's State Law Defamation Claims

Finally, the Court will decline, pursuant to 28 U.S.C. § 1367(c),[20] to exercise supplemental jurisdiction over the remaining state law defamation claims. District courts have supplemental jurisdiction over state law claims that "form part of the same case or controversy"

---

[20] 28 U.S.C. § 1367(c) provides, in pertinent part: "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3).

15

as the federal claim. 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. *Id.* § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (generally, if federal claims are dismissed before trial, state claims should be dismissed as well). "The doctrine of supplemental jurisdiction is one of flexibility, and there is no 'mandatory rule' requiring dismissal when the federal claim is disposed of before trial." *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 297 (4th Cir. 2003) (citation omitted); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [subject matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) ("The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away."). Factors such as "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity and considerations of judicial economy" inform the Court's discretionary determination. *Shanaghan*, 58 F.3d at 110.

Blankenship presents this Court with a series of federal question claims under 28 U.S.C. § 1331, asserting violations of the CSRA, Title VII of the CRA, and the Fifth and Fourteenth Amendments. Because the Court will grant AFGE's Motion to Dismiss these federal claims, the Court may exercise its discretion to either retain or dismiss the remaining state law assertions of defamation against AFGE. *See* 28 U.S.C. § 1367(c)(3).

Here, "the existence of . . . underlying issues of federal policy, comity and considerations of judicial economy," *Shanaghan*, 58 F.3d at 110, weigh in favor of dismissing the defamation claims against AFGE. *See Deavers v. Diggins*, No. 3:13cv821, 2015 WL 692835, at *5 (E.D.

16

Va. Feb. 18, 2015) (after granting summary judgment on all federal question counts, exercising discretion to dismiss remaining state law claim of negligence). Blankenship's CSRA charge and her Title VII allegations act as driving forces to her Complaint. Federal law and policy require that the FLRA and the EEOC—and not this Court—first adjudicate Blankenship's federal claims. *Fausto*, 484 U.S. at 449 (ULP charges must go to the FLRA); *Bryant*, 288 F.3d at 132 (Title VII claims must originate at the EEOC). As to comity, the Fourth Circuit "evinces a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction," meaning that the remaining state law defamation claims also should be decided elsewhere. *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010). (*See supra* note 4 (noting absence of diversity jurisdiction allegations).) Accordingly, having dismissed all claims undergirding federal question jurisdiction, the Court finds it in the interest of judicial economy to decline supplemental jurisdiction over the remaining state law defamation allegations. The defamation claims will be dismissed.

### IV. Conclusion

For the foregoing reasons, the Court will grant AFGE's Motion to Dismiss. (ECF No. 4.) The Court dismisses all claims brought under the CSRA, Title VII of the CRA, and the Fifth and Fourteenth Amendments to the United States Constitution. The Court exercises its discretion to decline jurisdiction over any remaining state law defamation claims. The Complaint will be dismissed. Because the Court will grant AFGE's Motion to Dismiss, it will deny Blankenship's

17

Motion to Dismiss the Motion to Dismiss and the Request for Entry of Default as moot. (ECF Nos. 9, 11.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 3/30/16

18